UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AQUA 2 ACQUISITION, INC., d/b/a
AUTOQUAL USA,

    Plaintiff,

                                                  Case No. 11-10408

-vs-                                          Hon: AVERN COHN

AUTOQUAL OF MID-MICHIGAN, INC.,

    Defendant.

_____/

## **MEMORANDUM AND ORDER OF CONTEMPT**

I.

This is a contempt proceeding arising out of an American Arbitration Association Award (Award) confirmed by the Court on May 26, 2011 in an Order and Judgment (Doc. 10) (order and judgment).

On September 19, 2011, Aqua 2 Acquisition, Inc., d/b/a AutoQual USA (Petitioner), petitioned the Court to hold James Clement (Clement) in contempt for operating a competitive business in violation of the Award (Doc. 12).

On September 20, 2011, the Court entered an Order to Show Cause (Doc. 16) requiring AutoQual of Mid-Michigan, Inc. (AutoQual) and James Clement (collectively Respondents) to show cause why they should not be held in contempt for violating the order and judgment. Clement was the owner, president and principal, if not the sole employee of AutoQual. The Court held an evidentiary hearing on the show cause order on November 17, 2011. Following the hearing, the parties filed supplemental briefs.

Petitioner says the proofs at the hearing support a finding of contempt. Respondents say otherwise.

II.

In 2004 the parties entered into a franchise agreement granting AutoQual the right to operate a franchise business for ten (10) years in certain counties in Michigan. The business is described in the Award as "interior reconditioning services," which is further defined as "cleaning, repairing, deodorizing, dyeing and masking carpets in the interior of vehicles, the sale and installation of floor mats and related products and services," primarily to new and pre-owned vehicles for car rental agencies, auctioneers and automotive sales and service businesses.

The relationship between the parties soured. The franchise terminated. AutoQual filed an arbitration demand claiming rescission on account of fraud, misrepresentation and discrimination. Petitioner responded denying the respondent's claims. Petitioner also said the franchise agreement was terminated for failure to pay franchise fees. Petitioner further asked for enforcement of the provision of the franchise agreement which forbid AutoQual from entering into a competitive business within fifty (50) miles of the location of the business for two (2) years after termination.

Petitioner prevailed in the arbitration. The Award states in part:

> 1. Claimant AutoQual of Mid-Michigan, including each of its officers, directors, shareholders, members and/or partners, directly and indirectly through any of the immediate family members of each such officer, director, shareholder, member and/or partner, shall for a period of two (2) years commencing on the date of issuance of this Award cease and desist from having any interest as owner, investor, partner, director, officer, employee, consultant, representative, or agent or in any other capacity in any business offering Interior

2

Reconditioning Services, as defined in paragraph 3, below, or granting franchises to others to offer Interior Reconditioning Services, within a fifty (50) mile radius of the perimeter of Claimant's franchised territories with Respondent, Aqua 2 Acquisition, Inc., as defined in the parties' Data Sheet to their Franchise Agreement, namely:

    (a)    Territory #1 consisting of Clinton, Ingham and Eaton counties and

    (b)    Territory #2 consisting of Livingston County, as well as the following cities: New Hudson, Wixom, Milford, Highland, White Lake, Commerce and Clarkston.

    2.    Claimant AutoQual of Mid-Michigan, including each of its officers, directors, shareholders, members and/or partners, directly and indirectly through any of the immediate family members of each such officer, director, shareholder, member and/or partner, shall for a period of one (1) year commencing on the date of issuance of this Award cease and refrain from having any interest as owner, investor, partner, director, officer, employee, consultant, representative, or agent or in any other capacity in any business offering Interior Reconditioning Services within the territory of any other AutoQual-branded franchisee of Respondent.

    3.    Interior Reconditioning Services is as defined in Paragraph A of the parties' Franchise Agreement, namely:

    cleaning, repairing, deodorizing, dyeing and masking carpets in the interior of vehicles, the sale and installation of floor mats and related products and services primarily to new and pre-owned vehicle customers, automobile rental agencies, auctioneers and automotive sales and service businesses.

* * * *

III.

A.

At the evidentiary hearing, the Court heard testimony from three witnesses. Craig Sluiter (Sluiter), an investigator, testified about his observations of Clement's activities. Clement testified about his activities. Finally, David Mountz (Mountz) testified about his relationship with Clement. Mountz is a former competitor and the nominal purchaser of Clement's business FrontLine Ready (Frontline) discussed below.

Exhibits in evidence at the hearing were CDs of Sluiter's observations of Clement, documents from the arbitration, and agreements between Clement and Mountz.

B.

Based on the record, the testimony at the evidentiary hearing and the documents in evidence at the hearing, the Court finds as follows:

1.  The Award prohibits AutoQual, and each of its officers, directors, shareholders, members and/or partners, directly or indirectly, through any of the immediate members of the same, from engaging in the activities described in paragraph 3 of the Award as stated above (Paragraph 3 Activities).

2.  Clement represented AutoQual at the arbitration.

3.  The Arbitration Award's prohibition of activity was for two (2) years and one (1) year, as described in the territories described in paragraph 1 of the Arbitration Award as stated above (Paragraph 1).

4.  Prior to the time of the Award, Clement was a member, officer and employee of AutoQual.

4

5. While Clement was operating AutoQual, he organized FrontLine Ready (FrontLine). He was its sole member. FrontLine was organized to engage in a more comprehensive interior reconditioning service than AutoQual.

6. As of the date of the Award and subsequently, Clement continued to engage in Paragraph 3 Activities. Clement also used immediate family members, as well as FrontLine, to engage in such activities.

7. As of the date of the Award, FrontLine engaged in the same activities as AutoQual, and serviced former customers of AutoQual. FrontLine used the same van and work station that AutoQual used.

8. About two (2) weeks after the Award, Clement assigned his interest in AutoQual to his brother.

9. On or about the same time, Clement sold FrontLine to Mountz for One ($1.00) Dollar out of concern that its ownership might be in violation of the Award. Mountz was inactive in the affairs of FrontLine. As far as Mountz knows, Clement's son now operates FrontLine.

10. Clement, since the date of the Award, has been engaging in Paragraph 3 Activities for basically the same customers he serviced during he period of the franchise, and in the same geographic areas.

IV.

A.

The prohibitions of the Award apply to Clement as well as AutoQual, and Clement's activities are in violation of these prohibitions. Two (2) cases confirm this conclusion:

In *Interstate Commerce Comm'n v. Rio Grande Growers Coop.*, 564 F.2d 848 (9th Cir. 1977), the "defendant, it's agents, employees, representatives, and all entities and persons, real, fictitious or corporate, and its representatives in concert or participation with it," were enjoined from transporting property without authorization from the I.C.C. Rio Grande was largely financed and operated by Stan Anderson (Anderson). Anderson abandoned Rio Grande and incorporated a new entity to operate in the same way. Anderson was found in contempt. The Ninth Circuit upheld the injunction, saying:

> [t]o find otherwise on the evidence would be to allow San Joaquin to nullify the court's decree and circumvent the I.C.C.'s regulations by carrying out prohibited acts through successive corporations not party to the original action. This we cannot accept.

564 F.2d at 849.

In *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353 (6th Cir. 1930), similar circumstances obtained. There the owner of an enjoined company changed the name of the company and began activities similar to those enjoined. The district judge's failure to find contempt was reversed, stating:

> to permit Manoff [principal of the enjoined company] to continue his infringing business with merely this change in the characterizing name is to make the decree futile and to

6

      disparage the power of the court to give relief against trade larceny.

41 F.2d at 849.

To the extent that FrontLine is run by Clement's children, Hanna Clement and Chase Clement, they are engaged in Paragraph 3 Activities. As such, they too are engaged in prohibited activities. *See, Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 912 (Colo. Ct. App. 1997) ("[a] non-signatory to a covenant will be bound because a covenantor will not be allowed to do through others what he or she could not do directly.")

### B.

In sum, Clement is in contempt for violating the prohibitions of the Award, and Chase Clement and Hannah Clement are on notice that the prohibitions of the Award applies to each of them.

### V.

### A.

Petitioner's request for an extension of the time limitation on the non-compete clause as to AutoQual, *i.e.*, two (2) years from the date of issuance of the Award, within a fifty (50) mile radius of the former AutoQual territories, and one (1) year within the territory of any other AutoQual-branded franchisee has merit. Allowing a party to escape compliance with an award because it was necessary to institute an enforcement action defeats the purpose of a non-competition restriction. *See, Overholt Crop Insurance Service Co. v. Travis*, 941 F.2d 1361 (8th Cir. 1991). Accordingly,

Respondents are enjoined from competing with Petitioner as required by Paragraph 1 of the Award from the date hereof.

B.

What remains to be decided are Petitioner's claims for damages and attorney's fees.  Both are in order given the Court's finding of contempt.  *See, Elec. Workers Pension Trust Fund of Local Union 58, IBEW, et al. v. Gary's Electric Service Co.*, 340 F.3d 373 (6th Cir. 2003) (damages) and *TWM Mfg.  Co., Inc. v. Dura Corp.*, 722 F.2d 1261 (6th Cir. 1983) (attorney's fees).  As such, Respondents have ten (10) days in which to respond to Petitioner's request.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  February 22, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 22, 2012, by electronic and/or ordinary mail.

    S/Julie Owens
Case Manager, (313) 234-5160